IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES PAUL KASHUBA, #182 652, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:14-cv-642-MHT-GMB |
| | ) | |
| CORIZON OPERATIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, who was an inmate incarcerated at the Ventress Correctional Facility ("Ventress") in Clayton, Alabama when he filed this *pro se* 42 U.S.C. § 1983 action, alleges that Defendants violated his Eighth Amendment right to adequate medical care and treatment.[1] Doc. 1. The named defendants are Corizon Operations, Dr. John Peasant, Warden Christopher Gordy, and Classification Specialist Ezzie Woods. Plaintiff requests damages and his transfer to another facility for medical treatment. Doc. 1.

Defendants Gordy and Woods (collectively, the "Correctional Defendants") filed a special report and supporting evidentiary materials addressing Plaintiff's claims for relief. In these documents, the Correctional Defendants deny that they acted in violation of Plaintiff's constitutional rights. Doc. 29. Defendants Peasant and Corizon Operations (collectively, the "Medical Defendants") argue that Plaintiff's complaint against them is

---

[1] During the pendency of this action, Plaintiff was transferred to another state correctional facility in Alabama.

due to be dismissed because, prior to filing this cause of action, Plaintiff failed to exhaust properly an administrative remedy available to him through the prison system's medical care provider, Corizon, Inc., prior to initiation of this case. Doc. 32 at 6–7. The Medical Defendants base their exhaustion defense on Plaintiff's failure to follow the available required administrative procedures at Ventress regarding the claims presented. Docs. 32 at 6–7, 32-1 & 32-5. In addition, the Medical Defendants maintain, and the evidentiary materials, including Plaintiff's medical records, indicate that Plaintiff received appropriate medical treatment during the time relevant to the matters alleged in the complaint. Docs. 32-1, 32-6 & 32-7.

The court provided Plaintiff an opportunity to file a response to Defendants' special reports in which he was advised, among other things, to "specifically address the medical defendants' argument that he [] failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA")." Doc. 33 at 1 (footnote omitted). The order advised Plaintiff that his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 33 at 3. This order further cautioned Plaintiff that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, the court may at any time [after expiration of the time for his filing a response to this order] and without further notice to the parties (1) treat the special reports and any supporting evidentiary materials as a [dispositive] motion . . . and (2) after considering any response as allowed by this order, rule on the motion in accordance with law." Doc. 33 at 3–4.

Plaintiff responded to Defendants' reports, *see* Doc. 42, but his response does not demonstrate that there is a genuine issue of material fact. *See* Doc. 33 at 3.

The court will treat the Correctional Defendants' special report as a motion for summary judgment and the Medical Defendants' special report as a motion to dismiss regarding the exhaustion defense, and the court will resolve these motions in favor of defendants. *See Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (internal quotations omitted) ("[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *see also Trias v. Fla. Dep't of Corrs.*, 587 F. App'x 531, 534 (11th Cir. 2014) (finding that district court properly construed defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies").

## I. STANDARD OF REVIEW

**A.     Exhaustion**

In addressing the requirements of 42 U.S.C. § 1997e exhaustion, the Eleventh Circuit has

> recognized that [t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court. This means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court.

*Leal v. Ga. Dep't of Corrs.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (citations and internal quotations omitted). Furthermore, the law is well settled that "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before

considering the merits of the case," and cannot be waived. *Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't*, 476 F. App'x 364, 366 (11th Cir. 2012) (quoting *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004)).

> When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. If the complaint is not subject to dismissal at this step, then the court should make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Myles*, 476 F. App'x at 366 (citations and internal quotations omitted). Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535. Based on the foregoing, the Eleventh Circuit has rejected an inmate-plaintiff's argument that "disputed facts as to exhaustion should be decided" only after a trial either before a jury or judge. *Id.* at 534.

**B.     Summary Judgment**

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

4

judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating that there is no dispute of material fact or by showing that the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id.* at 322–24.

The Correctional Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Celotex*, 477 U.S. at 324; *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file" demonstrate that there is a genuine dispute of material fact) (internal quotations omitted); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); Fed. R. Civ. P. 56(e)(3). This court will also consider "specific facts" plead in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

**A.** **Injunctive Relief**

Plaintiff requests injunctive relief. He is no longer incarcerated at Ventress. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (noting that past exposure to even illegal conduct does not, in and of itself, show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at Ventress, his request for injunctive relief is moot.

**B.** **The Correctional Defendant**s

Although Plaintiff names Warden Gordy and Classification Specialist Ezzie Woods as defendants, he makes no allegations against these individuals, nor is there any indication they were personally involved in his medical care. To the extent Warden Gordy is named as a defendant based on his supervisory position, supervisory personnel cannot be liable under § 1983 for a constitutional violation of one of their subordinates via a theory of

6

*respondeat superior* or on the basis of vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that doctrine of *respondeat superior* is inapplicable to § 1983 actions); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (explaining that 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for actions of their subordinates under either a theory of *respondeat superior* or vicarious liability); *see also Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation").

The *Iqbal* Court clarified that a government official sued in his or her individual capacity for alleged constitutionally tortious behavior cannot be held liable on a *respondeat superior* theory or on the basis of some general connection to allegedly responsible individuals or actions. *Iqbal*, 556 U.S. at 676–77 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* . . . [A] plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution . . . [P]urpose rather than knowledge is required to impose [constitutional] liability on . . . an official charged with violations arising from his or her superintendent responsibilities."); *see also Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990) (explaining that a supervisor "can be held liable under section 1983 when a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff, and his conduct was causally related to the constitutional violation committed by his subordinate") (citations and

footnote omitted). Rather, the language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by a defendant and the alleged constitutional deprivation. *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995).

Here, there is no indication—much less allegation by Plaintiff—of any facts showing purposeful personal involvement by Warden Gordy. Absent some allegation that Warden Gordy knew of, sanctioned, participated in, or was otherwise "affirmatively linked" to the actions about which Plaintiff complains, he may not be held liable. *See Iqbal*, 556 U.S. at 676.

To the extent Plaintiff claims that he was eligible for work release placement but his Hepatitis C condition prevented him from being classified for such status, he is entitled to no relief. An inmate in the Alabama prison system has no state-created liberty interest that entitles him to participation in favorable prison programs or work release. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Francis v. Fox*, 838 F.2d 1147, 1149 (11th Cir. 1988); *Kitchen v. Upshaw*, 286 F.3d 179, 188 (4th Cir. 2002) (finding that inmate who was denied permission to participate in work release had no constitutionally protected interest in work release because "it is clear that being denied permission to leave jail in order to work is nothing more than an ordinary experience of inmates"). Moreover, an inmate confined in the Alabama prison system has no constitutionally protected interest in the procedures affecting a change in his classification level because any resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Because Plaintiff has no constitutionally protected interest in the level of his custody and security classifications,

correctional officials may assign him to any classification or security level without implicating the protections of due process. The Correctional Defendants are, therefore, entitled to summary judgment on Plaintiff's claim challenging his eligibility for work release status.

C.     **The Medical Defendants**

Plaintiff challenges the provision of medical care he received for Hepatitis C during his incarceration at Ventress. In response to this claim, the Medical Defendants assert that this case may be dismissed against them because Plaintiff did not exhaust properly the administrative remedy provided by the institutional medical care provider prior to filing the complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Doc. 32 at 6–7. As explained, federal law directs this court to treat the Medical Defendants' response as a motion to dismiss for failure to exhaust an administrative remedy, and allows the court to look beyond the pleadings to relevant evidentiary materials in deciding the issue of proper exhaustion. *Bryant*, 530 F.3d at 1375.

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).

9

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation, and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander*, 159 F.3d at 1325; *Woodford v. Ngo*, 548 U.S. 81 (2006). Moreover, "the PLRA exhaustion requirement requires proper exhaustion," which

> demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage.

*Woodford*, 548 U.S. at 90–93. The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him." *Id.* at 83–84; *Bryant*, 530 F.3d at 1378 (holding that prisoners must "properly take each step within the administrative process" to exhaust administrative remedies in accordance with the PLRA); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion

requirement of the PLRA); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (holding that inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

In support of their motion to dismiss for failure to exhaust administrative remedies, the Medical Defendants attached the affidavit of Nettie Burks ("Burks"), the Health Services Administrator at Ventress. Burks affirms that Ventress has a grievance procedure for inmate complaints related to the provision of medical treatment at the facility. Burks affirms that inmates may voice complaints regarding any medical treatment sought or received during their incarceration. The grievance process is initiated when an inmate submits a medical grievance form to the Health Services Administrator ("HSA") through the institutional mail system. The HSA reviews and answers the grievance within five working days of receipt of the medical grievance. The second step of the grievance process is submission of a formal grievance appeal at which time the inmate may be brought in for a one-on-one communication with the medical staff, the HSA, or the Director of Nursing. A written response to the formal grievance appeal is provided within approximately five days of receipt, and the inmate is provided with a copy of the completed form. Docs. 32 & Doc. 32-1 at 5–6.

At the time of the actions about which Plaintiff complains, Burks, as HSA at Ventress, handled inmate grievances regarding their medical care and was the record custodian for inmate grievances at the facility. She affirms that, during the time Plaintiff

was incarcerated at Ventress, he submitted only one initial grievance regarding his medical care and treatment as alleged in the complaint, and did not avail himself of the grievance appeal process. Docs. 32-1 at 6 & Doc. 32-5 at 41.

The court granted Plaintiff an opportunity to respond to the exhaustion defense raised by the Medical Defendants in their motion to dismiss. Plaintiff's response does not dispute the Medical Defendants' assertion that he failed to exhaust an available administrative remedy. *See* Doc. 42. The court, therefore, finds that a grievance system is available at Ventress for Plaintiff's claims, but that he failed to exhaust the administrative remedy available to him. Plaintiff does not dispute his failure to exhaust the grievance procedure regarding the provision of his medical care at Ventress, and the unrefuted record before the court demonstrates that he failed to exhaust properly the administrative remedy available to him at the institution regarding his allegation of inadequate medical care prior to seeking federal relief—a precondition to proceeding in this court on his claims. The Medical Defendants' motion to dismiss for failure to exhaust is therefore due to be granted. *Woodford*, 548 U.S. at 87–94.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment (Doc. 29) filed by Defendants Gordy and Woods be GRANTED;

2. The motion to dismiss (Doc. 32) filed by Defendants Corizon Operations and Peasant be GRANTED to the extent those defendants seek dismissal of this case due to Plaintiff's failure to exhaust an administrative remedy prior to filing this case;

3. This case be DISMISSED without prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for Plaintiff's failure to exhaust properly an administrative remedy before seeking relief from this court.

4. No costs be taxed.

It is further ORDERED that **on or before May 2, 2017**, the parties may file any objections to the Recommendation. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object. Frivolous, conclusive, or general objections will not be considered by the District court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the district court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on this 18th day of April, 2017.

/s/ Gray M. Borden
UNITED STATES MAGISTRATE JUDGE